UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

KELWIN INKWEL, LLC, ANITA'S SKIN & BODY CARE, and D.B. KOSIE & ASSOCIATES, on behalf of themselves and all others similarly situated,

                      Plaintiffs,

v.

PNC MERCHANT SERVICES COMPANY, L.P.,

                      Defendant.

CIVIL ACTION NO.

1:17-cv-06255-FB-CLP

------------------------------------------------------------x

CHOI'S BEER SHOP, LLC, on behalf of itself and all others similarly situated,

                      Plaintiff,

v.

PNC MERCHANT SERVICES COMPANY, L.P.,

                      Defendant.

CIVIL ACTION NO.

1:19-cv-5768-FB-CLP

------------------------------------------------------------x

**FINAL ORDER AND JUDGMENT**

      This matter is before the Court on the unopposed (1) Motion for Final Approval of Class Action Settlement (Dkt. 99) and (2) Motion for Attorneys' Fees, Expenses, and Service Awards (Dkt. 100) filed by Plaintiffs and Class Counsel.[1]  The Court has reviewed all of the filings and evidence related to the Settlement Agreement and Release ("Settlement")[2] and received testimonial submissions and briefing on the motions.  Having considered the written

---

[1] All "Dkt." references are to Civil Action File No. 17-cv-06255 ("*Inkwel*"), unless otherwise noted.  Capitalized terms not otherwise defined herein have the meanings set forth in the Settlement.

[2] The Settlement is on file at Dkt. 97-2, Ex. A.

submissions, and after oral argument at a hearing on April 7, 2022, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that judgment be entered as follows:

### Jurisdiction

1. This Court has jurisdiction over the subject matter and the Parties, as well as the Settlement Class Members for purposes of the Settlement.

### Background

2. Defendant PNC Merchant Services Company, L.P. ("PNCMS or "Defendant") provides payment processing services.

3. The Plaintiffs-merchants allege that PNCMS breached the parties' payment processing contracts by imposing excessive annual fees and monthly paper statement fees without providing contractually required notice. Plaintiffs also allege that PNCMS was unjustly enriched by imposing early termination fees that constituted unlawful penalties.

4. Plaintiffs sought to recover the alleged overcharges on behalf of themselves and national classes of other merchants. PNCMS denies Plaintiffs' allegations.

5. This litigation has a complicated procedural history. The original complaint (Civil Action File No. 17-cv-06255) ("*Inkwel*") was filed on October 26, 2017, and amended on February 6, 2018. After a second related action (Civil Action File No. 18-cv-05906) was filed on October 22, 2018, the cases were consolidated and an amended consolidated class action complaint was filed in *Inkwel* on November 21, 2018.

6. PNCMS thereafter moved to dismiss the operative *Inkwel* complaint. This motion was granted in part and denied in part by the Court. Plaintiffs sought reconsideration and this motion was granted in part and denied in part.

7. On October 11, 2019, a third complaint was filed and assigned Civil Action File No. 19-cv-05768 ("*Choi's*"). PNCMS moved to dismiss the *Choi's* complaint and the motion was granted by the Court. Plaintiff appealed and the Second Circuit vacated and remanded.

8. The Parties took substantial litigation discovery in *Inkwel* and *Choi's*, including issuing and responding to dozens of written discovery requests and the production and review of more than 6,000 pages of documents. Discovery was fiercely contested and resulted in three motions to compel being filed.

9. The Parties also engaged in substantial motions practice. Aside from the motions previously noted, PNCMS moved to stay discovery, moved to deny class certification, and was planning to file another motion to dismiss in *Choi's* at the time the parties began settlement discussions.

10. Following three-and-a-half years of litigation, the Parties agreed to have the litigation mediated by mediator Terrence White, Esq. To prepare for mediation, PNCMS produced voluminous documentation and billing data to Plaintiffs so that class damages could be estimated.

11. On August 17, 2021, the Parties mediated and reached agreement on the material terms of the Settlement.

12. The Settlement terms were subsequently reduced to a Settlement Agreement and Release, for which the Parties sought Preliminary Approval on November 8, 2021. *See* Dkt. 97.

13. On November 9, 2021, the Court preliminarily certified the proposed Settlement Class, issued Preliminary Approval of the proposed Settlement, and instructed that Notice be distributed to the proposed Settlement Class Members. *See* Dkt. 98.

14. On November 18, 2021, PNCMS provided notice of the proposed Settlement to the appropriate federal and state authorities, as required by and in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715(b).

15. Notice was ultimately distributed to the 208,657 Settlement Class Members in accordance with the Preliminary Approval Order and the Settlement. The Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Expenses, and Service Awards were filed by Plaintiffs and Class Counsel on February 7, 2022. Dkts. 99-100. No objections to the Settlement or to either of the motions were filed before the March 9, 2022 deadline.

## Settlement Terms

16. Pursuant to the Settlement, PNCMS will pay up to $10,000,000 to establish a fund which will provide cash benefits to the Settlement Class Members via account credits and mailed checks and also cover attorneys' fees and expenses, service awards, and notice and administration costs. All of the 208,657 Settlement Class Members are eligible to receive a cash payment under the Settlement, unless the fees they paid were previously refunded. The 63,163 Settlement Class Members that are Current Customers, if eligible, will automatically be issued payments without the need to submit a claim. The 145,494 Settlement Class Members that are Former Customers are eligible to receive cash payments by filing a simple claim form.

17. The precise amount of the Settlement Fund (up to $10 million) will depend on the number of valid claims submitted by Former Customers but, no matter how many claims are submitted, PNCMS will under no circumstances pay less than $7,500,000.

18. The amount of each Settlement Class Member's payment will be calculated pursuant to the Allocation Formula attached as Exhibit 1 to the Settlement.

19. The Settlement also requires PNCMS to (a) provide, for the next five years, an additional 30 days' notice prior to assessing annual fees (thereby allowing Settlement Class Members that wish to avoid such fee more time to do so); (b) allow, for the next 18 months, all customers that are currently on a pricing plan that includes an annual fee the option to switch, penalty free, to an alternative (swipe/non-swipe) pricing plan that does not include an annual fee; (c) maintain, for the next five years, its current practice of waiving its contractual right to assess early termination fees on customers that terminate service prior to the end of their three-year initial contract term; and (d) obtain, for the next five years, merchant signatures prior to assessing paper statement fees on any merchant that did not elect to receive paper statements in exchange for a fee at the time of contracting. Such practice changes are expected to result in substantial additional savings for the Settlement Class Members.

20. In conjunction with the Settlement, the Settlement Class will release PNCMS from all claims that were or could have been raised in *Inkwel* and *Choi's*. Settlement Class Members specifically retain all rights to challenge invoices sent by PNCMS after December 31, 2021.

### Class Notice

21. Based on the declarations of Jason Rabe of Rust Consulting, Inc. (the appointed Settlement Administrator) (Dkts. 99-2, 103-1), the Court finds that that the Settlement Class Members have been individually notified of the Settlement pursuant to the plan approved and directed by the Court's Preliminary Approval Order, with more than 90% of these notices being successfully delivered. The Court further finds that the Notice Program constituted the best practicable Notice to the Settlement Class under the circumstances and fully satisfies the requirements of due process, including Fed. R. Civ. P. 23(e)(1), Fed. R. Civ. P. 23(c)(2)(B), and

28 U.S.C. § 1715. Accordingly, the Court has jurisdiction over all Settlement Class Members for purposes of the Settlement.

### Merit of Settlement

22. The Court has reviewed the terms of the Settlement and noted the lack of any objections from Settlement Class Members. After consideration of all of the criteria set forth in Fed. R. Civ. P. 23(e)(2), as well as *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), the Court finds that the Settlement is fair, reasonable, and adequate under the circumstances of this case and in the best interests of the Settlement Class. The Court specifically finds:

(a). The appointed Class Representatives have provided outstanding representation of the Settlement Class, and treatment of this litigation as a class action for settlement purposes, with the Settlement Class as defined below, is appropriate, proper, and satisfies the criteria set forth in Federal Rule of Civil Procedure 23(e);

(b). There has been extensive discovery conducted in this litigation, and the Parties and their counsel were thus well-informed about the relative strengths and weaknesses of their positions and well-positioned to determine the reasonableness of the Settlement;

(c). The terms of the Settlement provide substantial and direct benefits to the Settlement Class, including substantial monetary benefits and valuable non-monetary relief (i.e., practice changes);

(d). The appointed Class Counsel have zealously represented the Settlement Class, are experienced practitioners with significant experience in class action litigation, and have recommended approval of the Settlement;

(e).     The future expense and likely duration of the litigation, its uncertainty of outcome, and the range of recovery if the litigation were to proceed support approval of the Settlement;

(f).     Nothing indicates an absence of good faith or independence by Plaintiffs in negotiating the Settlement and indeed the Settlement was reached without collusion or fraud and at arms' length with the assistance of an experienced mediator;

(g).     No Settlement Class Member has objected to the Settlement; and

(h).     The Settlement treats Settlement Class Members equitably relative to each other.

23.     The Court thus hereby finally approves in all respects the Settlement and finds that the Settlement's terms for allocating and distributing the Settlement Fund are in all respects fair, reasonable, and adequate, and are in the best interests of the Settlement Class.

## Certification of Settlement Class

24.     The Court hereby certifies, for settlement purposes only, the following Settlement Class:

> All merchants that entered into a payment card processing service contract with Defendant that paid one or more of the Subject Fees between October 26, 2011, and November 9, 2021.

25.     Excluded from the Settlement Class are Defendant; parents or subsidiaries of Defendant; any entity in which any Defendant has a controlling interest; Defendant's counsel; the Court and any employees of the Court; and the legal representatives, heirs, successors, and assigns of any such excluded party. No Settlement Class Members excluded themselves from the Settlement Class.

26. The Court specifically determines that, for settlement purposes only, the Settlement Class meets all the requirements of Federal Rule of Procedure Rule 23(a) and (b)(3), namely that the Settlement Class is so numerous that joinder of all members is impractical; that there are common issues of law and fact; that the claims of the Class Representatives are typical of absent Settlement Class Members; that the Class Representatives and Class Counsel have and will fairly and adequately protect the interests of the Settlement Class; that common issues predominate over any individual issues; and that a class action is the superior means of adjudicating the controversy.[3]

27. Plaintiffs Anita's Skin & Body Care, D.B. Kosie & Associates, and Choi's Beer Shop, LLC have adequately represented the Settlement Class and are appointed as Class Representatives.

28. E. Adam Webb and Matthew C. Klase of Webb, Klase & Lemond, LLC have adequately represented the Settlement Class and are appointed as Class Counsel.

### ATTORNEY'S FEES, EXPENSES, AND SERVICE AWARDS

29. <u>Attorneys' Fees</u>: The Court hereby grants to Class Counsel a fee in the amount of $3,333,333, which the Court finds to be fully supported by the facts, record, and applicable law. This amount shall be paid from the Settlement Fund.

30. The Court finds that the Parties' agreement with regard to the payment of fees was not negotiated while they were negotiating the other terms of the Settlement and that the agreement was not the product of collusion or fraud. In fact, the amount of attorneys' fees to be

---

[3] The Court acknowledges that Plaintiffs did not move to certify the class outside the context of settlement and, thus, Defendant, apart from its motion to deny class certification that was pending at the time of settlement, has not had the opportunity to oppose a contested class certification.

paid was negotiated only after the other terms of the Settlement had been agreed upon. The agreed-upon fee is warranted as it is reasonable under the applicable facts and law.

31. The requested fee is justified under the percentage of recovery method adopted by the Second Circuit. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). The fee represents one-third (33.33%) of the $10 million Settlement Amount, which the Court finds to be reasonable and consistent with awards in similar cases in this Circuit. *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) ("it is very common to see 33% contingency fees in cases with funds of less than $10 million . . . ."); *also, e.g.*, *Karic v. Major Automotive Companies, Inc.*, No. 09 CV 5708 (CLP), 2016 WL 1745037, *8 (E.D.N.Y. April 27, 2016) ("Courts in this Circuit have often approved requests for attorneys' fees amounting to 33.3% of a settlement fund"); *Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270 (PAC), 2009 WL 5851465, *5 (S.D.N.Y. Mar. 31, 2009) (collecting cases and noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit"); *In re IPO Secs. Litig.*, 671 F. Supp. 2d 467, 514-16 (S.D.N.Y. 2009) (awarding attorneys' fees of one-third of a $586 million settlement fund); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, No. 18-MD-2819(NG)(LB), 2020 WL 6193857, *5-6 (E.D.N.Y. Oct. 7, 2020) (approving fee of one-third of $51.25 million settlement); *In re J.P. Morgan Stable Value Fund ERISA Litig.*, No.12-CV-2548(VSB), 2019 WL 4734396, *2 (S.D.N.Y. Sept. 23, 2019) (approving fee of one-third of $75 million settlement).

32. In approving the requested fee, the Court has carefully considered the reasonableness factors listed in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), including the time and labor expended by counsel, the magnitude and complexity of the

litigation, the risk of litigation, the quality of representation, the requested fee in relation to the settlement, and public policy considerations. The record shows that these factors all support the requested fee.

33. A lodestar "cross-check" also confirms the reasonableness of the requested fee. 209 F.3d at 50. Dividing the $3.33 million fee request by Class Counsel's lodestar yields an implied "multiplier" of approximately 2.54. This is within the range of multipliers approved during lodestar cross checks of percentage-of-fund awards. *E.g.*, *Bekker v. Neuberger Berman Group 401(K) Plan Inv. Committee*, 504 F. Supp. 3d 265, 271 (S.D.N.Y. 2020) (finding 5.85 is within the range of acceptable multipliers in context of lodestar cross-check); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (holding "[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers[,]" collecting cases, and approving 6.3); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (S.D.N.Y. 2011) (approving multiplier of 5.3, finding it is "not atypical for similar fee-awards," and collecting cases); *Cohan v. Columbia Sussex Mgmt.*, No. CV 12-3203 (AKT), 2018 WL 4861391, *5 (E.D.N.Y. Sept. 28, 2018) (noting courts regularly approve up to six times lodestar).

34. <u>Expenses</u>. The Court hereby grants to Class Counsel the requested reimbursement of $13,089.05 in litigation expenses they have incurred during the prosecution of this case. This expense award is fully supported by the Settlement, the facts, the record, and the applicable law. *E.g.*, *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970).

35. <u>Service Awards</u>. The Settlement provides for Service Awards of $10,000 for each of the three Class Representatives for their service on behalf of the Settlement Class. Service awards "are important to compensate plaintiffs for the time and effort expended in assisting the

prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *Cohan*, 2018 WL 4861391 at *6 (approving $10,000 service awards). The Court finds that payment of these Service Awards is warranted and approved in this case in light of the Class Representatives' substantial work on behalf of the Settlement Class and the risks they took in bringing suit.

36. The awarded fees and expenses shall be paid to Class Counsel and the Service Awards shall be paid to the Class Representatives in accordance with the terms of the Settlement.

## Releases

37. Pursuant to, and as more fully described in Section X of the Settlement, on the Effective Date, the Releasing Parties shall be deemed to have and, by operation of this final order and judgment shall have, fully and irrevocably released and forever discharged the Released Parties from the claims identified in paragraph 81 of the Settlement. The release does not affect any right of the Releasing Parties to contest for any reason any invoice sent by PNCMS after December 31, 2021.

## Cy Pres

38. In the event funds remain in the Settlement Fund ninety (90) days after reissued checks are mailed as contemplated by paragraph 78 of the Settlement, such funds shall be distributed to Settlement Class Members that previously cashed their checks if there are sufficient remaining funds to warrant such a distribution. If there are not sufficient remaining funds to warrant such a distribution, they shall be distributed via *cy pres* to such recipient(s) as are agreed on by the Parties and submitted to the Court for approval.

**Dismissal and Final Judgment**

39.     The Court hereby DISMISSES this action WITH PREJUDICE as against the named Plaintiffs, all Settlement Class Members, and Defendant, and the parties are directed to take the necessary steps to effectuate the terms of the Settlement. The parties shall bear their own costs except as provided by the Settlement.

40.     No Class Representative or Settlement Class Member, either directly, representatively, or in any other capacity, shall commence, continue, or prosecute any action or proceeding in any court or tribunal asserting any of the claims that have been released under the Settlement, and they are hereby permanently enjoined from so proceeding, including during the pendency of any appeal from this Final Approval Order.

41.     Pursuant to the Settlement, and there being no just reason for delay, the Court hereby ENTERS FINAL JUDGMENT, which the Clerk of Court is DIRECTED to immediately enter.

42.     Without affecting the finality of this judgment, the Court retains continuing and exclusive jurisdiction over all matters relating to the administration, consummation, enforcement, and interpretation of the Settlement and of this final order and judgment, to protect and effectuate this final order and judgment, and for any other necessary purpose. The Class Representatives, Defendant, and each Settlement Class Member (including any objectors, though there are none) are hereby deemed to have irrevocably submitted to the exclusive jurisdiction of this Court, for the purpose of any suit, action, proceeding, or dispute arising out of or relating to the Settlement, including the exhibits thereto, and only for such purposes. Without limiting the generality of the foregoing, and without affecting the finality of this final order and judgment, the Court retains exclusive jurisdiction over any such suit, action, or proceeding. Solely for

purposes of such suit, action, or proceeding, to the fullest extent they may effectively do so under applicable law, the Parties hereto are deemed to have irrecoverably waived and agreed not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of this Court, or that this Court is, in any way, an improper venue or an inconvenient forum.

### Use of this Order

43.     That the Parties have reached a Settlement and participated in proceedings related to the Settlement should not be (a) offered or received as evidence of a presumption, concession, or an admission by any party, (b) offered or received as evidence of a presumption, concession, or any admission of any liability, fault, or wrongdoing; provided, however, that reference may be made to the Settlement as may be necessary to effectuate or enforce its provisions.

44.     In the event that the Settlement does not become effective according to its terms, this order and final judgment shall be rendered null and void as provided by the Settlement, shall be vacated, and all orders entered and releases delivered in connection with the Settlement shall be null and void to the extent provided by and in accordance with the Settlement.

### Conclusion

45.     For the reasons set forth herein, the Court hereby (a) GRANTS final approval of the Settlement; (b) CERTIFIES the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3) and (e); (c) finds the Notice satisfied the requirements of Rule 23, due process, and all other legal requirements; (d) approves Class Counsel's requests for attorneys' fees of $3,333,333, expenses of $13,089.05, and service awards of $10,000 each for the Class Representatives; (e) DISMISSES this action WITH PREJUDICE as to all Parties and Settlement Class Members; and

(f) ENTERS FINAL JUDGMENT.  The Parties and the Settlement Administrator are directed to carry out the Settlement according to its terms.

**IT IS SO ORDERED.**

                                                                                          /S/  Frederic Block
                                                                                          FREDERIC BLOCK
                                                                                          SENIOR UNITED STATES DISTRICT JUDGE

April 12, 2022
Brooklyn, New York

14